UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| ROBERT E. SMITH, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil No. 12-134-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| UNIVAR USA, INC., et al., | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |
| | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

A group of employees became sick after working at the Dresser Industries plant in Berea, Kentucky. The employees and their spouses sued a group of chemical manufacturers. Their suit alleges that the manufacturers made and sold toxic chemicals to Dresser without properly warning Dresser of the risks that those chemicals posed. The defendants moved to dismiss, arguing that the plaintiffs' allegations did not state a plausible claim for relief. For the reasons given below, the motions are granted and denied in part. The plaintiffs' claims based on the defendants' individual actions survive the motion to dismiss because they contain sufficient factual allegations. The plaintiffs' claims based on the defendants' alleged agreement to deceive, however, do not contain sufficient factual allegations and thus must be dismissed.

## BACKGROUND

The complaint alleges that, from approximately 1966 to 1990, Dresser purchased Trichloroethylene ("TCE") and Trichloroethane 1,1,1 ("TCA") from the defendants for use as an industrial solvent. R. 71 at 3–4, 12–13 ¶¶ 6, 28. These chemicals are neurotoxins.

The defendants knew that, but they did not warn Dresser of the possible risks from exposure to TCE and TCA. *Id.* at 12–13, 18–21, 29–30. The warning labels did state that TCE and TCA are central nervous system depressants and that individuals should wash their hands after using the chemicals. *Id.* at 26–27 ¶ 67. But the warnings did not state that the chemicals could cause neurological damage or that the chemicals became dangerous when heated. *Id.*

The plaintiff-employees all worked at the Dresser plant during the period of time the plant was using TCE and TCA. Their jobs involved rinsing manufacturing parts in TCE and TCA, which led them to inhale TCE and TCA vapors and to absorb the chemicals through their skin. *Id.* at 4–12, 15 ¶¶ 7–22, 28, 32. Dresser took few safety precautions on behalf of its workers because it was unaware of the risks of exposure to TCE and TCA. *Id.* at 12–13 ¶ 28. The plant was poorly ventilated, and Dresser did not provide respiratory devices, gloves, or uniforms to employees. *Id.* For the same reason, the plaintiff-employees did not take precautions either. *Id.* at 26–27 ¶ 67. Worse still, the TCE and TCA were heated, so the vapors spread throughout the plant. *Id.* at 26 ¶ 66. The plaintiff-employees developed neurological ailments, organ damage, and cancer from their exposure to TCA and TCE. *Id.* at 22–23 ¶¶ 60, 62.

The complaint also alleges that the defendants either conspired or acted in concert to conceal the dangers of TCE and TCA. *Id.* at 20–21 ¶ 58. First, the defendants substantially assisted each others' efforts to keep consumers ignorant about the dangers of TCE and TCA. *Id.* at 31 ¶¶ 85–87. Second, each defendant sponsored its own misleading research about the

chemicals' dangers, and this research was intended to substantiate the other defendants' inadequate warnings. *Id.* at 31–32 ¶ 88. Third, the defendants created joint defense agreements and coordinated their responses to government agencies (such as OSHA) to "present false or misleading information about the health risks" of TCE and TCA. *Id.*

The plaintiff-employees seek compensatory and punitive damages for their injuries, and their spouses seek damages for loss of consortium. *Id.* at 27–29 ¶¶ 68, 79. Each of the defendants moved to dismiss the complaint. R. 73; R. 74; R. 75; R. 78.

## ANALYSIS

A complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The simplest way to meet that requirement is by listing each cause of action and then stating the facts that support each element of each cause of action against each defendant. Plaintiffs' counsel did not take that direct route, which explains why the third versions of the complaint and motions to dismiss are now before the Court. Fortunately for the plaintiffs, the law does not require their counsel to "pin [their] claim[s] for relief to a precise legal theory." *Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011). The plaintiffs' complaint fairly raises five claims: strict products liability, strict liability for failure to warn, negligent failure to warn, civil conspiracy, and concert of action. The first three claims survive because they are supported by factual allegations that "give notice to the defendant as to what claims are alleged, and . . . render the legal claim[s] plausible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (citation omitted). The second two are not, so they are dismissed.

3

I.      **Products Liability Claims**

The plaintiffs seek to recover from the defendants under three products liability theories: strict liability, negligent failure to warn, and strict liability for failure to warn.[1] R. 71 at 24 ¶ 64.  They have alleged facts that make these claims plausible against each defendant.

*Strict Liability*:   Under Kentucky law, the defendants are strictly liable if:  (1) they sold a product the plaintiffs used; (2) the product was unreasonably dangerous; (3) the product was expected to (and does) reach the plaintiffs "without substantial change in the condition in which it is sold"; and (4) the product is a substantial factor in causing the plaintiffs' injuries.  *Pike v. Benchmaster Mfg. Co*., 696 F.2d 38, 40–41 (6th Cir. 1982).  An "unreasonably dangerous" product is one that is dangerous beyond the contemplation of the products' ordinary consumers.  *Greene v. B.F. Goodrich Avionics Sys*., *Inc*., 409 F.3d 784, 788–89 (6th Cir. 2005).  That is, it carries risks that are not common knowledge among its community of users or purchasers.  *Id.* (citing Restatement (Second) of Torts § 402A cmt. i (1965)). So the plaintiffs' complaint must contain facts plausibly demonstrating that:  (1) the defendants sold TCE and TCA; (2) TCE and TCA are unreasonably dangerous; (3) the chemicals were expected to, and did, reach the plaintiffs in substantially the same condition

---

[1] The plaintiffs appear to assert manufacturing and design defect claims.  *See* R. 71 at 25–26 ¶ 65d.–g., i. Neither claim survives.  While the plaintiffs state that the defendants failed to properly design or manufacture TCE and TCA, *id.*, these assertions are merely "a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).  Since the plaintiffs failed to include factual allegations detailing how the chemicals were poorly designed or manufactured, these claims must be dismissed.  *See Greene v. B.F. Goodrich Avionics Sys., Inc.,* 409 F.3d 784, 788 (6th Cir. 2005) (holding that to prove a manufacturing defect a litigant must show that a product "was not manufactured or assembled in accordance with its specifications"); *see also Low v. Lowe's Home Ctrs., Inc.*, 771 F. Supp. 2d 739, 741 (E.D. Ky. 2011) ("To prove a design defect, [the plaintiff] must show that the defendants could have used a safer, and still feasible, design." (citation omitted)).

as when they were sold; and (4) each defendant's TCE or TCA was a substantial factor in causing each plaintiff's injuries.

The first three elements pose little problem for the plaintiffs. First, they allege that all of the defendants sold the chemicals to Dresser. R. 71 at 12−13, 22−23 ¶¶ 28, 60. Second, they allege that TCE and TCA are unreasonably dangerous. R. 71 at 18, 22−23 ¶¶ 50, 60. According to the complaint, these chemicals pose substantial dangers of which Dresser (and, inferentially, an ordinary consumer) was not aware. R. 71 at 12−13, 16−17, 22−23 ¶¶ 28, 38−48, 60. Third, the barrels of TCE and TCA were not substantially altered after they were sold by the defendants. R. 71 at 12−13, 22−23 ¶¶ 28, 60.

The defendants argue that the complaint does not allege that each of defendant's products were a substantial factor in each of the plaintiffs' injuries. In other words, while the plaintiffs may allege that they were harmed by some TCA and TCE, their allegations do not trace that TCA and TCE back to particular defendants. *See, e.g.*, R. 84 at 8; *see also In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*, No. 2:11-MD-2226-DCR, 2012 WL 767595, at *2 (E.D. Ky. Mar. 7, 2012) ("[A] threshold requirement of any products-liability claim is that the plaintiff assert that the defendant's product caused [his] injury." (quoting *Smith v. Wyeth*, 657 F.3d 420, 423 (6th Cir. 2011))). They are incorrect. The plaintiffs allege that all the defendants provided TCA and TCE to Dresser during the entire period that all the plaintiffs worked at the plant. R. 71 at 3 ¶ 6 (Dresser purchased TCE and TCA between 1979 "until around 1988 to 1990 from PPG, Hooker, Dow and [Univar]"), *id.* at 12 ¶ 28 ("For decades, beginning in the 1960's and as late as the early 1990's, [] Dresser . . .

5

purchased [] barrels [of TCE and TCA] from Univar USA, Inc., PPG Industries, Inc., The Dow Chemical Company and Occidental . . . ."), *id.* at 22 ¶ 60 ("In the 1960's, 1970's and '80's, Univar USA, Inc., PPG Industries, Inc., The Dow Chemical Company and Occidental. . . manufactured, distributed and sold [TCE and TCA] . . . to the Dresser Plant [and each plaintiff was] exposed to the [TCE and TCA] manufactured and sold . . . by defendants . . . ."). Since the final element requires only that the product be a "substantial factor" in the plaintiff's injury, greater specificity is not required. Furthermore, to the extent that the plaintiffs plead in the alternative that the defendants supplied Dresser during select periods, *Id.* at 13–14 ¶¶ 29–30, these arguments are not fatal. Federal Rule of Civil Procedure 8(d)(3) allows alternative pleadings. So the plaintiffs' strict liability claim survives.

*Failure to Warn*: Kentucky plaintiffs can choose between strict liability and negligence theories when pursuing a failure to warn claim. A manufacturer is strictly liable if a plaintiff can show that the manufacturer failed to warn the plaintiff about the dangers of putting the product to a certain use, thereby rendering the product unreasonably dangerous. *Tipton v. Michelin Tire Co.*, 101 F.3d 1145, 1149 (6th Cir. 1996) (citing *C & S Fuel, Inc. v. Clark Equip. Co.*, 552 F. Supp. 340, 347 (E.D. Ky. 1982)). Alternatively, a manufacturer is negligently liable if it knew or had reason to know that its product was likely to be dangerous, had no reason to expect the product's users would be aware of that danger, and failed to exercise reasonable care to alert users of that danger. *Tipton*, 101 F.3d at 1149–50.

The complaint survives under either theory. The plaintiffs allege that the defendants' warnings were inadequate and that without proper warnings TCE and TCA are dangerous beyond the expectation of an ordinary consumer—particularly when used as an industrial

6

solvent.  R. 71 at 12, 16, 22–23 ¶¶ 28, 38–48, 60.  And the complaint alleges that all of the defendants knew that their warnings were inadequate, and that the inadequate warnings were likely to cause injury to users of TCE and TCA.  R. 71 at 26–27 ¶ 67.  Finally, as noted above, the plaintiffs allege that each defendant's chemicals (and thus each defendant's failure to warn of the chemicals' dangers) caused harm to each plaintiff.

## II.   Civil Conspiracy and Concert of Action

The plaintiffs' civil conspiracy and concert of action claims must be dismissed.  First, the plaintiffs did not sufficiently allege an intentional tort.  Second, they have presented no factual allegations supporting the existence of a conspiratorial agreement between the defendants.  Finally, the plaintiffs presented no allegations that would support their claim that the defendants substantially assisted each other in the commission of any torts.

*Conspiracy*:  To state a claim for civil conspiracy under Kentucky law, the plaintiffs must show that the defendants agreed to "do by some concerted action an unlawful act." *Montgomery v. Milam,* 910 S.W.2d 237, 239 (Ky. 1995).  Civil conspiracy, however, is not a free-standing claim; "it merely provides a theory under which a plaintiff may recover from multiple defendants for an underlying tort."  *Stonestreet Farm, LLC v. Buckram Oak Holdings, N.V.*, No. 2008-CA-002389-MR, 2010 WL 2696278, at *13 (Ky. Ct. App. July 9, 2010) (citing *Davenport's Adm'x v. Crummies Creek Coal Co.*, 184 S.W.2d 887, 888 (Ky. 1945).  Furthermore, the underlying tort must be intentional—after all, defendants cannot agree together to be negligent.  *See Peoples Bank of N. Ky. v. Crowe Chizek and Co. LLC,* 277 S.W.3d 255, 261 (Ky. Ct. App. 2008) ("[M]ere negligence is not sufficient to support a claim for civil conspiracy.  Rather, there must be proof that the defendants acted tortiously

pursuant to a common design, or that they rendered substantial assistance to others to accomplish the tortious act."). The plaintiffs do not list an intentional tort in their complaint. Nor could the plaintiffs' counsel name an intentional tort when pressed by the Court during the motions hearing held on February 14, 2013. *See* R. 92 (noting motion hearing held).[2]

Even assuming the complaint does allege that the defendants' committed an intentional tort, it does not adequately allege that there was an unlawful agreement. The complaint does allege that the defendants "agreed with each other to conceal the adverse health effects" of TCE and TCA. R. 71 at 20 ¶ 58. But "[g]eneric pleading, alleging misconduct against defendants without specifics as to the role each played in the alleged conspiracy" cannot survive a motion to dismiss. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 436 (6th Cir. 2008) (noting that plaintiffs must do more than present "bare allegations without any reference to the 'who, what, where, when, how or why'" (citing *Twombly*, 550 U.S. at 557)). The plaintiffs' "[c]onclusory allegations of agreement at some unidentified point," *Twombly*, 550 U.S. at 557, are insufficient to survive a motion to dismiss.

*Concert of Action*: Under a concert of action theory, the plaintiffs can hold the defendants jointly and severally liable if they prove the defendants (1) acted unlawfully by common design; (2) knew that a codefendant was acting unlawfully and gave substantial encouragement to the codefendant; or (3) gave substantial assistance to a codefendant's unlawful acts, when the defendant's conduct was also unlawful. *Peoples Bank of N. Ky.,*

---

[2] When invited by the Court to consider the tort of fraudulent misrepresentation, counsel agreed that the complaint alleged this tort even though it was nowhere to be found in their brief.

8

*Inc.*, 277 S.W.3d at 261 (citing *Farmer v. City of Newport,* 748 S.W.2d 162 (Ky. App. 1988)).  Allegations of parallel activity are insufficient to state a concert of action claim.  *See Dawson v. Bristol Laboratories*, 658 F. Supp. 1036, 1040 (W.D. Ky. 1987).

The complaint does not contain any factual allegations that state a plausible claim against the defendants under any of those three theories.  *See Twombly*, 550 U.S. at 570 (a complaint must contain "enough facts to state a claim to relief that is plausible on its face").  Nor do the plaintiffs' allegations "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Id.* at 555 (citation omitted).  First, the plaintiffs assert that the defendants acted "pursuant to a common design."  R. 71 at 31 ¶ 86(a).  But, as noted above, there are no facts in the complaint suggesting an agreement or common design between the defendants.  Second, the plaintiffs assert that the defendants "[k]new that the actions of the [co-defendants] in hiding  . . . the risks of [TCE and TCA] . . . were breaches of duty . . . and gave substantial assistance" to the co-defendants.  R. 71 at 31 ¶ 86(b).  But the plaintiffs' allegations do not describe what substantial assistance each defendant gave the other defendants.  And, third, the plaintiffs argue that the defendants "[g]ave substantial assistance to [their co-defendants] in manufacturing and selling TCE and TCA without proper warnings, and independently engaged in "conduct which was a breach of duty to [the] plaintiffs."  R. 71 at 31 ¶ 86(c).  But, again, the complaint does not adequately put the defendants on notice because the plaintiff did not present facts explaining how each defendant's conduct substantially assisted its co-defendants.  And while each defendant's research (or governmental testimony) may have justified the other defendants' inadequate

warnings, R. 71 at 31–32 at ¶ 88, it is not clear what duty *to the plaintiffs* the defendants breached by this conduct.  Thus, the plaintiffs' concert of action claims must be dismissed.

## III.    Motion to Sever

PPG also requests that the Court sever each of the plaintiffs' claims.  *See* R. 78.  But PPG agrees that a joint pre-trial process would be most convenient for all parties.  R. 78-1 at 10–11.  For the reasons stated on the record at the February 14 hearing, the Court will deny PPG's motion without prejudice.  After discovery the Court will be in a better position to decide if the plaintiffs' claims meet the transactional-relatedness requirement of Federal Rule of Civil Procedure 20(a).

**CONCLUSION**

It is therefore **ORDERED** that:

(1)    The defendants' motions to dismiss, R. 73, R. 74, R. 75 and R. 78, are **DENIED** with respect to the plaintiffs' strict liability and failure to warn claims and **GRANTED** with respect to the plaintiffs' civil conspiracy and concert of action claims.

(2)    PPG's motion to sever, R. 78, is **DENIED WITHOUT PREJUDICE.**

This the 18th day of March, 2013.



**Signed By:**

*Amul R. Thapar*

**United States District Judge**